# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

BALMURALI RAJARAMAN, JACQUELINE HILL,
and ANRI INSURANCE AGENCY INC.,

  Plaintiffs,

  v.          Case No. 23-CV-425-SCD

GOVERNMENT EMPLOYEES INSURANCE COMPANY
a/k/a GEICO,

  Defendant.

## DECISION AND ORDER DENYING PLAINTIFFS' MOTION TO RECONSIDER AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

  Plaintiffs Balmurali Rajaraman, Jacqueline Hill, and ANRI Insurance Agency, Inc. filed suit against Government Employees Insurance Company (GEICO) for fraud in the inducement, intentional misrepresentation, and breach of contract. The plaintiffs have moved for reconsideration of my denial of their request to substitute or join the bankruptcy trustee as a plaintiff. The defendant has moved for summary judgment in its entirety, claiming that the applicable statute of limitations bars each of the plaintiffs' claims, and even if not, that each claim fails as a matter of law. For the reasons below, I will deny the plaintiffs' motion for reconsideration and grant the defendant's motion for summary judgment.

## BACKGROUND

  From 2002 to 2019, Rajaraman worked for GEICO in various roles in Dallas, Texas. ECF No. 93 ¶¶ 1–2. In 2019, Rajaraman and Hill (husband and wife) became the directors of a new insurance company registered in Wisconsin—ANRI Insurance Agency, Inc. *Id.* ¶¶ 8, 46. At that time, Rajaraman quit his job with GEICO and executed an agreement to join the

GEICO field representative (GFR) program. *Id.* ¶ 47. Through the GFR program, GEICO enters contractual relationships with third parties to permit them to sell and service GEICO insurance policies in exchange for commissions. *Id.* ¶¶ 10–11.

Prior to entering the GFR program, Rajaraman claims that two GEICO employees— then-GEICO recruiting manager Victoria Elliot and her assistant Patricia Oropeza— represented to him that GEICO had no GFR opportunities in Texas. *Id.* ¶¶ 17–18, 42. After GEICO declined to offer a GFR opportunity to Rajaraman in Seattle, Rajaraman considered other available locations, such as Chicago. *Id.* ¶ 33–37. Rajaraman claims Elliot advised him that Milwaukee "would be a better location as the area was much larger and he would be the only office in the immediate area." *Id.* ¶ 39. Hill attended one lunch with Rajaraman and Elliott in May 2019 regarding Rajaraman becoming a GFR. *Id.* ¶ 43. At that lunch, Hill asked Elliot for the franchise disclosure documents under the assumption that the GFR program was a franchise program. *Id.* ¶ 44. Elliot advised that it was not a franchise program and that she did not know about any such documents. *Id.* ¶ 45.

On May 20, 2019, Rajaraman submitted his application for the Milwaukee GFR office. *Id.* ¶ 38. The application required certain financial projections, which Rajaraman had generated based on internal GEICO data that Elliot provided. *Id.* ¶ 21–22, 24. Rajaraman claims that he questioned Elliot about the data because it did not match public records but that she simply told him not to worry. *Id.* ¶ 24. The projection that Rajaraman submitted reflected that the Milwaukee office would generate $1,310,260 in revenue and $168,976 in profit in its first year of operation. *Id.* ¶ 29.

GEICO approved Rajaraman for the Milwaukee GFR office by May 28, 2019. *Id.* ¶ 40. In June 2019, a third party incorporated ANRI and appointed Rajaraman and Hill to be its

2

directors. *Id.* ¶ 46; ECF No. 96-3 at 39:23–40:23. Rajaraman was ANRI's sole shareholder. ECF No. 93 ¶ 9. On July 29, 2019, Rajaraman executed a GFR agreement. *Id.* ¶ 47. The parties have not produced a fully executed copy of the agreement and dispute whether Rajaraman executed it on behalf of ANRI. *Id.* ¶¶ 47–48. Rajaraman also attended a two-day GFR orientation and marketing presentation on or around July 29 and 30, 2019. *Id.* ¶ 49. The presentation (which Rajaraman also received via email) explained GEICO's marketing support process, including GEICO's plan to reimburse seventy-five percent of marketing costs. *Id.* ¶ 50. At the orientation, Elliot informed Rajaraman that she had quit GEICO and been approved to open a GFR office in Mesquite, Texas—near Rajaraman's home in Texas. *Id.* ¶ 51–53.

After moving to Wisconsin, Rajaraman operated out of a temporary office until he could move into a permanent space in December 2019. *Id.* ¶ 79; ECF No. 96-3 at 27:22–25. Hill arrived in Wisconsin in February 2020, but even by then, the plaintiffs "didn't know [if they] could stay open much longer. ECF No. 93 ¶ 90. On March 1, 2020, GEICO sent ANRI a "Plan to Meet Established Expectations Memorandum" because "the sales [were] not coming in." *Id.* ¶ 91–92.

On March 16, 2020, Rajaraman emailed the GFR management team, advising that he would be closing the Milwaukee office that same day and inquiring about next steps for reemployment in the Dallas office. *Id.* ¶ 94; ECF No. 86-21. Rajaraman also asked for next steps "to close the office" and stated he would be "on-site during operating hours to help with walk-ins and calls until you give us further direction." ECF No. 86-21. On March 18, 2020, a

senior GEICO employee texted Rajaraman to log off his computer and shut down all access to GEICO systems. ECF Nos. 93 ¶ 101; 96-3 at 9:17–25.

On March 31, 2023, Rajaraman, Hill, and ANRI initiated this action in federal district court. ECF No. 1. They initially sued several other defendants, but after three amended complaints, only GEICO remains. *See* ECF Nos. 8, 17, 29. The clerk randomly assigned the matter to Judge Stadtmueller, who reassigned the matter to me after all parties consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b). *See* ECF Nos. 31, 59, 61. On December 20, 2024, the plaintiffs filed a motion to reconsider my denial of their motion to substitute or join the bankruptcy trustee as a plaintiff, ECF No. 83. GEICO filed a brief in opposition, ECF No. 87, and the plaintiffs filed a reply brief, ECF No. 90. On December 20, 2024, the defendant filed a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, *see* ECF No. 84, the plaintiffs filed a brief in opposition, ECF No. 91, and the defendant filed a reply brief, ECF No. 102. During briefing, the plaintiffs also filed a motion to seal certain exhibits. ECF No. 94 (requesting to seal Exhibits 1 and 7, filed as ECF Nos. 95-1 and 95-2). The defendant filed a motion in support of sealing, ECF No. 101.

## MOTION TO RECONSIDER

### I.     Legal Standard

"Rule 59(e) motions offer district courts an opportunity to correct errors that may have crept into the proceeding, before the case leaves the district court for good." *Sosebee v. Astrue*, 494 F.3d 583, 589 (7th Cir. 2007). "Rule 59(e) does not provide a vehicle for a party to undo its own procedural failures, and it certainly does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior to

4

judgment." *Barrington Music Prods. v. Music & Arts Ctr.*, 924 F.3d 966, 968 (7th Cir. 2019) (internal quotations omitted) (quoting *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 954 (7th Cir. 2013)). Rather, "[a] motion under Rule 59(e) may be granted only if there has been a manifest error of fact or law, or if there is newly discovered evidence that was not previously available." *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021) (citing *Cincinnati Life Ins. Co.*, 722 F.3d at 954).

"A 'manifest error' is not demonstrated by the disappointment of the losing party. It is the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'" *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (quoting *Sedrak v. Callahan*, 987 F. Supp. 1063, 1069 (N.D. Ill. 1997)). Thus, relief under Rule 59(e) is an "extraordinary" remedy "reserved for the exceptional case." *Vesey v. Envoy Air, Inc.*, 999 F.3d 456, 463 (7th Cir. 2021) (quoting *Gonzalez-Koeneke v. West*, 791 F.3d 801, 807 (7th Cir. 2015)).

## II. Discussion

The plaintiffs contend that my order reflects misunderstandings of: (1) Judge Stadtmueller's prior orders, (2) GEICO's arguments regarding undue prejudice, and (3) the scope and effect of the plaintiffs' proposed substitution.[1] ECF No. 83 at 4. I will address each theory in turn.

### A. Law of the Case Doctrine

With respect to Judge Stadtmueller's prior orders, the plaintiffs argue that my decision violates the "law of the case" doctrine. *Id.* "The doctrine of law of the case establishes a presumption that a ruling made at one stage of a lawsuit will be adhered to throughout the

---

[1] In their reply brief, the plaintiffs raise the additional argument that undue delay does not support denial. ECF No. 90 at 11–13. Arguments should not be raised for the first time in a reply brief, and in any event, I rested my decision not on delay, but on the conclusion "that an amendment would unfairly prejudice the defendant and that any such amendment would likely be futile." ECF No. 80 at 6.

5

suit." *Avitia v. Metro. Club of Chicago, Inc.*, 49 F.3d 1219, 1227 (7th Cir. 1995). "Generally speaking, a successor judge should not reconsider the decision of a transferor judge at the same hierarchical level of the judiciary when a case is transferred." *Brengettcy v. Horton*, 423 F.3d 674, 680 (7th Cir. 2005). The plaintiffs acknowledge that Judge Stadtmueller did not expressly rule on whether the plaintiffs could substitute the bankruptcy trustee into this action, as neither party filed a motion directly on this point during Judge Stadtmueller's assignment to this case. *See* ECF No. 83 at 4. Accordingly, the plaintiffs have failed to establish any law of the case on this point.

Nevertheless, the plaintiffs insist that I wrongfully relied on Judge Stadtmueller's statement that "any further amendment will not be permitted." *Id.* The plaintiffs argue that Judge Stadtmueller made that comment explicitly with respect to the plaintiffs' reference to amending their complaint to add new claims, not parties. *See* ECF No. 83 at 4–5 (citing ECF No. 54 at 10–11). However, my order simply concluded, "It is difficult to disagree with that conclusion, whether it is law of the case or not." ECF No. 80 at 6. I noted that the plaintiffs have had multiple opportunities to amend the complaint, and yet at every opportunity they did not name the real party in interest. *Id.* I also observed that the plaintiffs waived any response to the defendant's argument that amendment or substitution would be futile. *Id.* This independent reasoning reflects that I did not rely on any indirect ruling by Judge Stadtmueller. In fact, the plaintiffs point out that I contradicted Judge Stadtmueller's order denying the defendant's motion to set a dispositive motion deadline. ECF No. 83 at 4–5. This contradiction reflects my willingness to work within the flexibility that is inherent in the law of the case doctrine. *See Avitia*, 49 F.3d at 1228 (observing that the law of the case doctrine "is no more than a presumption, one whose strength varies with the circumstances; it is not a

6

straitjacket"). For these reasons, the plaintiffs have not demonstrated any manifest error or that law of the case even applies to this issue.

### B. *Undue Prejudice*

The plaintiffs also submit that my order was in error because GEICO did not meet its burden of establishing undue prejudice. ECF No. 83 at 5–6. On the contrary, "[t]he party seeking to amend has the burden of showing that undue prejudice will not result to the non-moving party." *McDaniel v. Loyola Univ. Med. Ctr.*, 317 F.R.D. 72, 77 (N.D. Ill. 2016) (citing *King v. Cooke*, 26 F.3d 720, 724 (7th Cir. 1994)).[2] Thus, the plaintiffs had the burden to establish that amendment or substitution would not "unduly" prejudice GEICO.

Even so, the plaintiffs generally repeat the same reasons why they believe any prejudice to GEICO would not be undue—the only exception being that the plaintiffs contend (in their reply brief) that I failed to account for prejudice to the creditors of Rajaraman and Hill's bankruptcy estate. *See* ECF Nos. 83 at 5–6, 90 at 9–14. Notwithstanding that "arguments raised for the first time in a reply brief are deemed waived," the plaintiffs fail to cite any authority establishing that courts must explicitly consider third-party beneficiaries of the litigation. *See Griffin v. Bell*, 694 F.3d 817, 822 (7th Cir. 2012) (citations omitted). After all, most litigation will result in third-party consequences to some degree.

When faced with a motion to amend, "the trial court, in exercising its discretion, must balance the general policy behind Rule 15 (that controversies should be decided on the merits)

---

[2] The plaintiffs cite conflicting case law reflecting a different burden—that "the non-movant has the burden to show prejudice which outweighs the moving party's right to have the case decided on the merits." ECF No. 83 at 5 (quoting *Hartley v. Wisconsin Bell*, 167 F.R.D. 72, 74 (E.D. Wis. 1996)). However, the plaintiffs do not reconcile that case with conflicting Seventh Circuit precedent or cite any superseding decisions from a court of equal or higher authority. *See King*, 26 F.3d at 724 (finding that "a party seeking an amendment carries the burden of proof in showing that no prejudice will result to the non-moving party"). Regardless of the correct standard, my order gave weight to the undue prejudice identified by the defendant. *See* ECF No. 80 at 5–6.

7

against the prejudice that might result from amendment." *Hess v. Gray*, 85 F.R.D. 15, 20 (N.D. Ill. 1979). In weighing this balance, the beneficiaries of the litigation (whether third parties or not) are effectively considered in the court's effort to prioritize merit-based resolutions. Here, in spite of that prioritization, I determined that prejudice to the defendant would be undue. *See* ECF No. 50 at 5–6. Accordingly, the plaintiffs have not established a manifest error.

## C. Scope and Effect of Proposed Substitution

The plaintiffs argue that I misunderstood the scope and effect of their proposed substitution because introducing the bankruptcy trustee would merely involve an amendment to the caption. ECF No. 83 at 6–7. They insist that their motion to substitute or join (1) was not made on the eve of trial, (2) would not require the defendant to conduct any new discovery; and (3) would not otherwise prejudice the defendant. *Id.* at 6. These contentions constitute an impermissible attempt to "rehash" old arguments that I already addressed in my last order. *See Oto*, 224 F.3d at 606. In that vein, the plaintiffs "did not demonstrate that there was a disregard, misapplication or failure to recognize controlling precedent." *Id.*

With respect to the effect of substitution, the plaintiffs also contend that they intended the motion in question to squash any futility arguments because they recognize that Rajaraman and Hill are not the real parties in interest. ECF No. 83 at 6. This explanation does not change the fact that the plaintiffs failed to respond to GEICO's allegation that amendment would be futile because the plaintiffs' claim would fail even if the bankruptcy trustee joined the action. *See* ECF No. 50 at 6 (citing ECF Nos. 71 at 30–31, 75). The plaintiffs twist the futility argument in their reply brief, contending that they sought amendment to avoid any "then-existing futility." ECF No. 90 at 10–11. The plaintiffs claim that they were not required to rebut futility arguments because the parties were not permitted to file motions

8

for summary judgment at the time they filed their motion to substitute or join. *See id.* This argument is simply nonsensical; regardless of inability to move for summary judgment, any futility will always be revealed sooner or later, so it is still an appropriate consideration for motions to amend. *See Lee v. Akture*, 827 F. Supp. 556, 561 (E.D. Wis. 1993) (denying a request to add new parties because amendment would be futile).

For all the foregoing reasons, the plaintiffs have failed to establish any manifest error with respect to my denial of their motion to substitute or join the bankruptcy trustee as a plaintiff.

## MOTION FOR SUMMARY JUDGMENT

### I.     Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts" are those that, under the applicable substantive law, "might affect the outcome of the suit." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A moving party is "entitled to a judgment as a matter of law" when "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Still,

> a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

*Id.* (internal quotation marks omitted).

9

To determine whether a genuine issue of material fact exists, I must review the record, construing all facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *See Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003) (citing *Anderson*, 477 U.S. at 255). "However, [my] favor toward the nonmoving party does not extend to drawing inferences that are supported by only speculation or conjecture." *Fitzgerald v. Santoro*, 707 F.3d 725, 730 (7th Cir. 2013) (quoting *Harper v. C.R. Eng., Inc.*, 687 F.3d 297, 306 (7th Cir. 2012)). That is, "to survive summary judgment, the non-moving party must establish some genuine issue for trial 'such that a reasonable jury could return a verdict' in her favor." *Id.* (quoting *Makowski v. SmithAmundsen LLC*, 662 F.3d 818, 822 (7th Cir. 2011)); *see also Thomas v. Nationwide Mut. Ins. Co.*, 47 F. App'x 255 (4th Cir. 2002) (same).

## II. Discussion

GEICO argues that the applicable statutes of limitation bar each of the plaintiffs' three claims (intentional misrepresentation, fraud in the inducement, and breach of contract) and, in any event, that the claims fail as a matter of law. ECF No. 85 at 1–2. The plaintiffs maintain that the discovery rule should toll the statutes of limitation and that disputes of material fact prevent resolution on summary judgment. *See* ECF No. 91 at 11–30.

### A. Statute of Limitations

The parties agree that Wisconsin applies a three-year statute of limitations to intentional misrepresentation and fraud in the inducement claims. *See* ECF Nos. 85 at 11, 91 at 6 (citing Wis. Stat. §§ 893.57, 893.93(1m)(b)). The parties further agree that Maryland law applies to the breach of contract claim, which likewise falls under a three-year statute of limitations. *See* ECF Nos. 85 at 22, 91 at 16. The parties disagree as to when the three-year clocks started ticking. GEICO argues that the plaintiffs "knew of any and all claims that they

10

could assert and the facts underlying them" no later than March 16, 2020 (the date that Rajaraman closed the Milwaukee GFR office). ECF No. 85 at 13. The plaintiffs do not pinpoint when their claims began to accrue but contend that the discovery doctrine pushed the clocks' starting times to at least March 31, 2020. *See* ECF No. 91 at 11–22. Because the plaintiffs filed their complaint on March 31, 2023, the applicable statutes of limitation would bar any claims that began to accrue prior to March 31, 2020.

The discovery rule is an exception to the statute of limitations whereby the accrual date for a claim is "when the plaintiffs discovered or, in the exercise of reasonable diligence, should have discovered that the [defendant's] alleged fraud was a cause of their injuries." *John Doe 1 v. Archdiocese of Milwaukee*, 734 N.W. 2d 827, 830–31 (Wis. 2007). Under this rule, "it is not necessary that a defrauded party have knowledge of the ultimate fact of fraud. What is required is that [the defrauded party] be in possession of such essential facts as will, if diligently investigated, disclose the fraud." *Id.* (quoting *Koehler v. Haechler*, 133 N.W.2d 730, 732 (Wis. 1965)). The plaintiffs bear the burden of establishing the applicability of the discovery rule. *See Wisconsin Laborers Pension Fund v. R.L. Davis Contracting Servs., LLC*, No. 19-CV-400-JDP, 2020 WL 6730912, at *1 (W.D. Wis. Nov. 12, 2020) (citing *Cathedral of Joy Baptist Church v. Vill. of Hazel Crest*, 22 F.3d 713, 717 (7th Cir. 1994)).

Maryland applies the discovery rule to civil actions with the same principles. *See, e.g.*, *Morris v. Bank of Am.*, No. 1:24-CV-01949-JRR, 2024 WL 4651028, at *3 (D. Md. Nov. 1, 2024) ("Under the discovery rule, 'the burden is on Plaintiffs to prove that they did not discover the alleged wrong more than three years before they filed suit and that this lack of discovery was not due to Plaintiffs' unreasonable failure to exercise ordinary diligence.") (quoting *Finch v. Hughes Aircraft Co.*, 469 A.2d 867, 893 (Md. App. 1984)).

11

### 1. Intentional Misrepresentation and Fraud in the Inducement

I will address the first two claims together because all the elements of an intentional misrepresentation claim are found in a fraud in the inducement claim. *See Kaloti Enterprises, Inc. v. Kellogg*, 699 N.W. 2d 205, 217 (Wis. 2005) ("Liability for fraud in the inducement requires that the five elements of an intentional misrepresentation claim for relief . . . are satisfied, and in addition, that the misrepresentation has occurred before contract formation."). At the heart of these two claims, the parties address the same four misrepresentations allegedly conveyed by GEICO: (1) the parties would not be in a franchise relationship; (2) the plaintiffs would make over $1,000,000 in their first year; (3) GEICO would provide marketing assistance; and (4) there were no GFR opportunities in Texas. *See* ECF Nos. 85 at 16, 91 at 7–13.

Beginning with the franchise relationship, the plaintiffs contend that they lacked essential facts to support such a belief prior to March 31, 2020. ECF No. 91 at 12. They claim that Hill "did not believe they were franchisees until months after the Milwaukee office closed" and that Rajaraman "did not have notice or knowledge of his franchise-based claims until he went 'through all the facts' and put them together, which occurred after the Milwaukee office closed." *Id.* at 7. These contentions miss the mark, as the discovery doctrine does not require "[a]ctual and complete knowledge of the fraud" to set the limitation period running. *John Doe 1*, 734 N.W.2d at 843. The time it took for the plaintiffs to "go through" and put the facts together is simply irrelevant when, as here, the plaintiffs have not alleged that they learned of any material facts not already in their possession by March 16, 2020.

With respect to the financial projections, the plaintiffs similarly claim that they lacked the essential facts to suspect fraud prior to March 31, 2020. ECF No. 91 at 13–15. The

12

plaintiffs emphasize that they reasonably relied on financial data from GEICO that projected over one million dollars in first-year earnings. *See id.* However, the plaintiffs do not meaningfully rebut GEICO's contention that the truth or falsity of its representations must have been known to the plaintiffs no later than the date that they ceased operations. *See* ECF No. 85 at 12–13. After all, ANRI ceased operations less than eight months after entering the GFR program and had not performed as financially projected. *See* ECF No. 93 at ¶¶ 47, 94, 99. Accordingly, the discovery doctrine will not forgive their delayed investigation. *See Lewis v. Paul Revere Life Ins. Co.*, 80 F. Supp. 2d 978, 1006 (E.D. Wis. 2000) ("The discovery rule insures that the limitations period will not begin to run on plaintiffs who reasonably do not know or are unsure about whether they have been injured. It does not toll the beginning of the limitations period until plaintiffs have completed research into their potential causes of action.").

As for marketing assistance, the plaintiffs contend that they were not aware of any related misrepresentations by March 16, 2020. ECF No. 91 at 15. The plaintiffs argue that GEICO wrongfully relied on a conversation between Rajaraman and another GFR regarding GEICO allegedly "pulling the plug" on marketing in the Midwest. ECF No. 91 at 15. Regardless of that conversation, the plaintiffs have failed to explain what facts were unknown to them by March 16, 2020—and even so, the relevant tipping point in fact discovery was March 31, 2020. *See id.* at 15–16. Although the plaintiffs argue that Rajaraman did not receive a copy of the GFR agreement until after ANRI ceased operations, they do not suggest that they were unaware of GEICO's representations to assist with marketing.[3] ECF No. 91 at 8.

---

[3] The plaintiffs concede that Rajaraman attended a presentation and received an email during GFR orientation that explained GEICO's marketing support process, including GEICO's plan to reimburse seventy-five percent of marketing costs and other marketing resources. ECF No. 93 ¶¶ 49–50.

The plaintiffs point to several representations by GEICO employees about assistance with marketing and client generation, but these occurred prior to ANRI's closing—by which point the plaintiffs knew what marketing assistance GEICO had provided. *See id.* at 16. Consequently, the plaintiffs have not established applicability of the discovery rule.

Finally, the plaintiffs argue that they were unaware—prior to March 16, 2020—of GEICO's alleged misrepresentations regarding the availability of Texas-based GFR offices. ECF No. 91 at 16. The plaintiffs assert that their knowledge of Elliot's GFR opportunity in Texas was insufficient to put them on notice of a potential claim for fraud because multiple GFR opportunities became available in Texas over the coming months. *Id.* at 17. In fact, the plaintiffs point out that five GFR locations became available in Texas between June 2018 and the end of 2019. *Id.* The plaintiffs contend that GEICO failed to prove that Rajaraman had notice of all the Texas-based GFR offices available. *Id.* at 18. But it is not the defendant's burden to prove the discovery rule's application for the plaintiffs. *See Cathedral of Joy Baptist Church*, 22 F.3d at 717. The plaintiffs have offered no evidence regarding when they first learned about the other Texas opportunities, nor have they produced any other evidence gleaned after March 16, 2020, in support of their claim.

Ultimately, the plaintiffs argue that "the mere understanding that certain financial, marketing, and franchise-related representations were inaccurate, is not the same as testimony or evidence in the record that the [p]laintiffs knew that GEICO had intentionally or fraudulently made such misrepresentations with the intent that [the plaintiffs] rely on them." ECF No. 91 at 21. While the plaintiffs' observation is correct, they improperly blame the defendant for failing to bridge that gap. The defendant is not responsible for building the plaintiffs' case. Here, the plaintiffs have not provided evidence of fraudulent intent beyond the

14

existence of inaccuracies and unfulfilled expectations. GEICO maintains that it did not engage in fraudulent misrepresentations, so it makes little sense to expect GEICO to pinpoint when the plaintiffs learned of evidence suggesting conduct that GEICO claims never occurred. Put simply, the plaintiffs' failure to introduce any evidence that they learned of material facts after March 16, 2020, is fatal to their claim. *See Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 973 (7th Cir. 2020) ("Summary judgment is the proverbial put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events."). Because the plaintiffs filed the complaint more than three years later, the applicable statutes of limitation bar their claims for intentional misrepresentation and fraud in the inducement.

### 2. Breach of Contract

The plaintiffs argue that GEICO obstructed their ability to discover their breach of contract claim by refusing to provide Rajaraman with a copy of the GFR agreement until he retained counsel sometime after ANRI ceased operations. ECF No. 91 at 22. But the plaintiffs fail to provide evidence backing up this assertion.[4] Regardless, the plaintiffs fail to successfully establish application of the discovery doctrine to their claim for breach of contract. After all, the plaintiffs do not claim they were unaware of GEICO's obligations, only that GEICO failed to provide a copy of the executed contract. *See* ECF No. 91 at 21–22, 31–33.

---

[4] The plaintiffs cite "Ex. 1, ¶ 1–4" as evidence of GEICO's refusal to provide a copy of the GFR agreement, but the record is unclear as to what document the plaintiffs intended to cite. The first attachment to the plaintiffs' appendix, ECF No. 96-1, is labelled Exhibit 2. "Exhibit 2" is an excerpt from Rajaraman's deposition transcript, and the beginning paragraphs do not support the claim. The plaintiffs' appendix, ECF No. 94, identifies Exhibit 1 as an email from Elliot to Rajaraman regarding the GFR orientation schedule. The plaintiffs also moved to seal "Exhibit 1," but it likewise lacks support. *See* ECF Nos. 94, 95-1. The defendant's Exhibit 1 also does not support the claim. *See* ECF No. 86-2.

As signatory to the contract, the plaintiffs are charged with the knowledge of its contents. *See Mitchell v. AARP Life Ins. Program, New York Life Ins. Co.*, 779 A.2d 1061, 1071 (Md. 2001) ("[A] contract signatory is presumed to know the contents, signs at his peril, suffers the consequences of his negligence, and is estopped to deny his obligation under the contract."). Logically, the plaintiffs knew what marketing and training GEICO had provided by the time ANRI ceased operations; they have not asserted that any reimbursement or other similar scheme caused a delay in that understanding. The plaintiffs have failed to identify any material information they gleaned after March 16, 2020, that underpinned their claim. *See Curry v. Trustmark Ins. Co.*, 600 F. App'x 877, 884 (4th Cir. 2015) (affirming court's refusal to apply discovery rule to breach of contract claim based on subjective and objective knowledge of breach). Because the plaintiffs have failed to demonstrate application of the discovery rule, the three-year statute of limitations bars the breach of contract claim.

## B. Merits Analyses

Even if the statute of limitations did not bar the plaintiffs' claims, GEICO argues that all three would fail as a matter of law. As above, I will address the claims in two sections.

### 1. Intentional Misrepresentation and Fraud in the Inducement

Both intentional misrepresentation and fraud in the inducement require a plaintiff to prove the following five elements by clear and convincing evidence:

> 1) the defendant must have made a representation of fact to the plaintiff; 2) the representation of fact must be false . . . 3) the plaintiff must have believed and relied on the misrepresentation to his detriment or damage . . . 4) the defendant must have made the misrepresentation with knowledge that it was false or recklessly without caring whether it was true or false; and 5) the defendant must have made the misrepresentation with intent to deceive and to induce the plaintiff to act on it to his detriment or damage.

16

*Tietsworth v. Harley-Davidson, Inc.*, 677 N.W.2d 233, 239 (Wis. 2004); *see also Kaloti Enterprises*, 699 N.W.2d at 217; *Lundin v. Shimanski*, 368 N.W.2d 676, 681 (Wis. 1985). In addition, the plaintiffs' reliance, as described in the third element, must have been justifiable. *See In Re Peterson*, 604 B.R. 751, 768-69 (E.D. Wis. 2019). Liability for fraud in the inducement further requires that the misrepresentation occurred before contract formation. *Kaloti Enterprises*, 699 N.W.2d at 217.

Again, the parties address the same four alleged misrepresentations for these two claims: (1) the parties would not be in a franchise relationship; (2) the plaintiffs would make over $1,000,000 in their first year; (3) GEICO would provide marketing assistance; and (4) there were no GFR opportunities in Texas. *See* ECF Nos. 85 at 16, 91 at 7–13. At bottom, the financial, marketing, and Texas-based representations suffer from a common failure to satisfy the second element, which requires evidence of the representation's falsity at the time it was made. *See Schurmann v. Neau*, 624 N.W.2d 157, 161 (Wis. Ct. App. 2001) ("[U]nless the speaker knew of facts inconsistent with his statements or had a present intent not to perform, an action for misrepresentation cannot be based on future events or facts not in existence when the representation was made, or on unfulfilled promises.").

First, with respect to the financial representations, GEICO argues that "there is no reason to believe that those data points were inaccurate at the time they were provided." ECF No. 85 at 26. The plaintiffs themselves argue that GEICO "provided economic metrics based on existing real-time company data . . . that reflected GEICO's real-time performance in Milwaukee." ECF No. 91 at 27. Albeit in reference to an argument about the then-present nature of the representations, this statement underpins the fact that the plaintiffs do not point to any evidence of the data's falsity at the time that Elliot provided it to Rajaraman. *See id.*

17

Although the plaintiffs may believe GEICO presented the data in a misleading manner, misleading simply does not mean false. *See* ECF No. 93 ¶ 23.

Second, regarding marketing support, GEICO contends that this representation concerned a promise to perform in the future, which does not qualify as a representation of fact for purposes of these claims, unless the speaker did not have the present intent to perform. *See Schurmann*, 624 N.W.2d at 161. The plaintiffs argue that GEICO induced the plaintiffs to accept the Milwaukee opportunity "with promises that it intended to 'pump' its marketing efforts in the Midwest" but that GEICO never did so. ECF No. 91 at 9. The plaintiffs assert that this constituted a promise with no intent to perform. *See id.* at 29. However, some amount of performance negates any inference that the defendant never intended to perform. *See RMS of Wisconsin, Inc. v. S-K JV*, No. 13-CV-1071, 2015 WL 9592520, at *5 (E.D. Wis. Dec. 31, 2015) (citing *Wausau Med. Ctr., S.C. v. Asplund*, 514 N.W.2d 34, 42 (Wis. Ct. App. 1994); *Constr. Mortg. Invs. Co. v. VWH Dev., LLC*, No. 2008AP1849, 2009 WL 529894, at *2 (Wis. Ct. App. Mar. 4, 2009)). Here, the plaintiffs point to the ways in which they believe GEICO limited ANRI's ability to effectively engage in marketing, but they do not challenge GEICO's contention that it performed to some degree by providing marketing assistance.[5] *See* ECF No. 91 at 29. Ultimately, the plaintiffs have not pointed to any evidence from which it could be determined or reasonably inferred that GEICO never intended to perform with respect to its marketing promises. *See id.*

---

[5] The parties agree that, during ANRI's operations, GEICO sent out direct marketing mailers, provided one billboard, assumed seventy-five percent of the cost for two additional billboards, provided unsold internet quotes, conducted national television advertising within the Milwaukee market, conducted at least one radio advertisement, and supplied Rajaraman with a gecko advertising costume, inflatables, and brand table skirts. ECF No. 93 ¶ 81–88.

18

Third, as to the Texas-based representations, GEICO argues that its internal documents establish that no GFR opportunities were available when Rajaraman applied and interviewed to open a GFR office. ECF No. 85 at 27. The parties agree that multiple Texas offices became available in the coming months, but the plaintiffs contend that GEICO failed to inform Rajaraman that he could have applied to those offices despite having verbally accepted the Milwaukee offer. ECF No. 91 at 17, 28. Even so, the plaintiffs' contentions simply do not supply any evidence that GEICO's representation about the lack of Texas opportunities was false at the time that Elliot advised Rajaraman about the openings. *See* ECF No. 93 ¶ 55 (plaintiffs' responding "undisputed" to the fact that "[n]o Texas opportunities were available when Rajaraman applied and was accepted to become a GFR in Milwaukee in May 2019").

As for the franchise representation, GEICO argues, among other issues, that the economic loss doctrine bars this claim. ECF No. 85 at 17–18. "Under the economic loss doctrine, Wisconsin law bars tort claims which seek only 'economic losses' related to a commercial transaction." *Home Valu, Inc. v. Pep Boys*, 213 F.3d 960, 963 (7th Cir. 2000) (citing *Wausau Tile, Inc. v. County Concrete Corp.*, 593 N.W.2d 445, 451 (Wis. 1999). The plaintiffs assert that the economic loss doctrine does not apply because they incurred non-economic damages—namely, "accept[ing] a GFR opportunity in a commercially unviable locale" and "open[ing] a temporary office space contrary to GEICO's best practices." ECF No. 91 at 25. The plaintiffs offer no legal support for distinguishing these consequences as non-economic and acknowledge that "the associated damages are certainly related to the parties' contract." *See id.*

19

"Wisconsin's highest court draws the line between economic and non-economic loss by emphasizing that economic loss is damage 'which does not cause personal injury or damage to other property.'" *Home Valu*, 213 F.3d at 963 (citing *Daanen & Janssen, Inc. v. Cedarapids, Inc.*, 573 N.W.2d 842, 845 (Wis. 1998)). "In contrast, non-economic damages, which are recoverable in tort, involve some 'physical harm' or other 'unreasonable risk of injury to person or property.'" *Id.* (quoting *Northridge Co. v. W.R. Grace and Co.*, 471 N.W.2d 179, 185 (Wis. 1991)). "Put otherwise, the economic loss doctrine provides that 'when contractual expectations are frustrated because of a defect in the subject matter of the contract and the only damages are economic losses, the exclusive remedy lies in contract.'" *Bakery Bling v. Matrix Packaging Mach., LLC*, 685 F. Supp. 3d 718, 747 (E.D. Wis. 2023) (citations omitted).

"While first applied in the context of products liability cases, the Wisconsin Supreme Court has gradually expanded the [economic loss] doctrine 'to cover many other areas,' while maintaining that the doctrine does not apply to contracts predominantly for services." *Gaughan v. New Am. Funding, LLC*, No. 23-CV-641-JPS, 2023 WL 5424066, at *8 (E.D. Wis. Aug. 10, 2023) (citing *Zimmerman v. Logemann*, No. 09-cv-210, 2011 WL 1674956, at *3, *14 (W.D. Wis. Mar. 17. 2011) (collecting cases)). Applied here, there is simply no indication the damages identified by the plaintiffs are anything other than economic. *See Digicorp, Inc. v. Ameritech Corp.*, 662 N.W.2d 652, 662–65 (Wis. 2003) (analyzing economic loss doctrine with respect to a contract for approval to sell calling plans and services).

The plaintiffs argue that, even if the economic loss doctrine applies, the fraud in the inducement exception permits the franchise claim to survive. ECF No. 91 at 25. To qualify for this exception, the plaintiffs must prove that the allegedly fraudulent misrepresentation

was extraneous to, rather than interwoven with, the contract. *See Hinrichs v. DOW Chem. Co.*, 937 N.W.2d 37, 47 (Wis. 2020). The plaintiffs contend that the critical question is "whether one would expect for the matter over which the fraud occurred 'to be dealt with in the contract.'" ECF No. 91 at 25 (citing *Schreiber Foods, Inc. v. Lei Wang*, 651 F.3d 678, 682 (7th Cir. 2011)). However, that query is relevant when the issue was not actually addressed in the contract. Here, the GFR agreement explicitly stated that the "GFR is an independent contractor and not an employee, leased employee, agent, partner, *franchisee*, or joint venturer of [GEICO]." ECF No. 29-1 at 3 (emphasis added). The GFR agreement further stated that "GFR agrees to maintain an office from which to conduct Company's business. This office shall be located at the address set forth above." *Id.* Thus, the franchise representation was not extraneous to the contract and cannot qualify for the fraud in the inducement exception. Accordingly, the economic loss doctrine, at the very least, bars the franchise representation from stating a claim for intentional misrepresentation or fraudulent inducement.

For the foregoing reasons, the plaintiffs' claim for intentional misrepresentation and fraudulent inducement would fail on the merits even if the statutes of limitations did not bar them.[6]

### 2. Breach of Contract

The plaintiffs alleged in the complaint that GEICO breached the contract by failing to provide the marketing assistance and training set forth in the GFR agreement. ECF No. 29 at ¶¶ 89–91. Yet, in their response to the defendant's motion for summary judgment, the plaintiffs allege that GEICO breached the implied duty of good faith and fair dealing, inherent

---

[6] The parties dispute whether the plaintiffs can seek rescission of the contract. I need not reach this question because "rescission is a remedy, not a claim." *Next Millennium Telecom Co. v. Am. Signal Corp.*, 473 F. Supp. 3d 875, 888 (E.D. Wis. 2020).

in all contracts, by controlling the plaintiffs' business decisions, which resulted in the plaintiffs' inability to utilize their "best efforts" to sell and service lines of insurance. ECF No. 91 at 32.

The implied covenant argument introduces a new theory too late in the game. The plaintiffs suggest that breach of the implied duty is an element of a breach of contract claim. *See id.* at 31. But that does not change that a complaint may not be constructively amended at the summary judgment stage. *See Harris v. Reston Hosp. Ctr., LLC*, 523 F. App'x 938, 946 (4th Cir. 2013) (holding that a plaintiff's assertion of a new argument at the summary judgment stage was "an impermissible attempt to constructively amend the complaint"). The complaint cited failure to provide marketing and support, and it simply did not put the defendant on notice of any alleged breached based on control. *See id.* ("Because a complaint 'guides the parties' discovery, putting the defendant on notice of the evidence it needs to adduce in order to defend against the plaintiff's allegations,' constructive amendment of the complaint at summary judgment undermines the complaint's purpose and can thus unfairly prejudice the defendant." (citations omitted)).

The plaintiffs do not otherwise defend the merits of their breach of contract claim. *See* ECF No. 91. As GEICO points out, the plaintiffs fail to identify any specific provision that GEICO could have breached related to marketing. *See* ECF No. 85 at 31–32. Without any particular promise to evaluate, I cannot find a material dispute over GEICO's performance. *See Asher v. Chase Bank USA, N.A.*, 310 F. App'x 912, 921 (7th Cir. 2009) (affirming the grant of summary judgment when the plaintiff "could not point to any provision that was breached"). Accordingly, the breach of contract claim would fail on the merits as well.

## MOTION TO SEAL

The plaintiffs moved to seal "Exhibits 1 and 7," ECF Nos. 95-1 and 95-2, but indicated that they did not wish to take a position as to sealing and had so moved only because GEICO labelled the documents "confidential" upon production. ECF No. 94. GEICO submitted a response in support of the plaintiffs' motion to seal Exhibits 1 and 7. ECF No. 101.

The court "may not rubber stamp a stipulation to seal the record." *Citizens First Nat. Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 945 (7th Cir. 1999). "Documents that affect the disposition of federal litigation are presumptively open to public view, even if the litigants strongly prefer secrecy, unless a statute, rule, or privilege justifies confidentiality. *In re Specht*, 622 F.3d 697, 701 (7th Cir. 2010). When a filing contains trade secrets "or something comparable whose economic value depends on its secrecy," the court may restrict the public's access thereto. *See Baxter Int'l, Inc. v. Abbott Lab'ys*, 297 F.3d 544, 547 (7th Cir. 2002).

Here, GEICO argues that a competitor could use Exhibits 1 and 7 to gain a competitive advantage. ECF No. 101 at 3. Exhibit 1 contains the GFR orientation agenda, which GEICO contends that a competitor could use to enhance its training and recruitment for similar programs. *Id.* GEICO claims that competitors could use Exhibit 7, containing a PowerPoint slide deck regarding marketing strategy and metrics, to undercut it in the market. *Id.* at 2–3.

I am satisfied that the defendant has sufficiently established good cause to maintain these documents under seal because they contain sensitive business information that could potentially harm its competitive business position. The sealing order will expressly provide

Case 2:23-cv-00425-SCD    Filed 04/15/25    Page 23 of 24    Document 105

that any party or interested member of the public may challenge the sealing of those exhibits.

*See Citizens First Nat. Bank of Princeton*, 178 F.3d at 946.

## CONCLUSION

For all the foregoing reasons, the court: (1) **DENIES** the plaintiffs' motion to reconsider my denial of their motion to substitute or join the bankruptcy trustee as a plaintiff, ECF No. 83; (2) **GRANTS** the defendant's motion for summary judgment, ECF No. 84; and (3) **GRANTS** the plaintiffs' motion to seal Exhibits 1 and 7, ECF No. 94. The action is dismissed with prejudice. The clerk of court shall enter judgment accordingly.

**SO ORDERED** this 15th day of April, 2025.

STEPHEN C. DRIES
United States Magistrate Judge